```
 1                   UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                      SAN ANTONIO DIVISION

 3    UNITED STATES OF AMERICA        :
                                      :
 4    vs.                             : Case No. SA:19-CR-00063-DAE
                                      : San Antonio, Texas
 5    HAE YEONG SONG(1),              : December 8, 2021
      Defendant.                      :
 6    ********************************************************

 7                    TRANSCRIPT OF SENTENCING
                 BEFORE THE HONORABLE DAVID A. EZRA
 8             SENIOR UNITED STATES DISTRICT JUDGE

 9    APPEARANCES:
      FOR THE GOVERNMENT:
10      Bettina Richardson, Esquire
        Assistant U.S. Attorney
11      United States Attorney's Office
        601 N.W. Loop 410, Suite 600
12      San Antonio, Texas  78216
        (210)384-7152
13

14
      FOR THE DEFENDANT:
15      John A. Convery, Esquire
        Julie Hasdorff, Esquire
16      Hasdorff & Convery, P.C.
        1005 South Alamo Street
17      San Antonio, Texas  78210
        (210)738-9060
18

19

20    COURT REPORTER:
      Angela M. Hailey, CSR, CRR, RPR, RMR
21    Official Court Reporter, U.S.D.C.
      655 East Cesar E. Chavez Blvd., Third Floor
22    San Antonio, Texas  78206
      Phone(210)244-5048
23    angela_hailey@txwd.uscourts.gov

24    Proceedings reported by stenotype, transcript produced by
      computer-aided transcription.
25
```

1    *(Wednesday, December 8, 2021, 9:09 a.m.)*

2                          *  *  *

3              COURT SECURITY OFFICER:  All rise.

4              COURTROOM DEPUTY CLERK:  SA:19-CR-00063, United States

5    of America versus Song.

6              THE COURT:  All right.  Can we have appearances

7    please?

8              MS. RICHARDSON:  Good morning, Your Honor.  Bettina

9    Richardson on behalf of the United States.

10             MR. CONVERY:  Good morning, Your Honor.  John Convery

11   and Julie Hasdorff for Hae Yeong Song.

12             THE COURT:  All right.  Before we begin, counsel, have

13   you had a full and ample opportunity to go over the presentence

14   investigation and report including all conditions of supervised

15   release with your client as laid out there, and that includes

16   the special conditions and the conditions as laid out in the

17   amended order of November 28, 2016 and file any objections you

18   wish to file?

19             MR. CONVERY:  Yes, sir.

20             THE COURT:  Okay.  Now, one of the reasons that I

21   postponed the sentencing on Monday as I was told that the

22   defendant's family wanted to be here or were going to be here

23   and so I granted that request.  And now I understand they're

24   not here?

25             MR. CONVERY:  I must apologize to the Court.  That was

1    my understanding at the time that I conferred with the Court
2    staff.  Other events overtook those.  They're in Maryland, Your
3    Honor, and with omicron and the various things and the father
4    didn't want to come without the mother and it's -- I appreciate
5    your willingness to do that, to not do it on Monday.  I don't
6    mind and I didn't mind at the time that the defense was asked
7    to postpone it if it was another day that's better for the
8    Court, but at the time I did that, I believed they were going
9    to fly to San Antonio.  I know that they wanted to attend, but
10   I have I think for the record and for the Court's purposes I
11   conferred in the last 15 minutes with Mr. Song and he would
12   like to proceed.  He doesn't have to wait until his mother and
13   father are here.  The Court has letters and we'll discuss that
14   later on.
15          THE COURT:  All right.  That's fine.  Now, I also saw
16   that one of your objections was that you had not had a chance
17   to review the victim impact statements, but they've been
18   provided, haven't they?
19          MS. RICHARDSON:  I have those, Your Honor.
20          THE COURT:  Has he seen them?
21          MR. CONVERY:  No.
22          THE COURT:  Well, you're asking for restitution, he
23   wants to see the victim impact statements, so --
24          MR. CONVERY:  I had asked -- the problem isn't the
25   jurisdiction.  We get the PSI, it talks about restitution.  I

1    object to the PSI.  And in an unfortunate chain of events, the

2    Probation Office is switching over to another communication

3    method called Box.  So the draft PSR or PSI languaged in Box, I

4    don't know if the government got their copy, but the defense

5    didn't even know it had been produced, the draft, until after

6    the time for objections when the Probation Office just sent it

7    to the Court.  So we immediately said, Hey, we never received

8    this, the defendants never received this.

9              THE COURT:  Well, you did file objections.

10             MR. CONVERY:  Yes.  Ultimately I had to ask for a

11   continuance then.

12             THE COURT:  Right.

13             MR. CONVERY:  I had to extend the date.

14             THE COURT:  And the continuance was granted.

15             MR. CONVERY:  And I did make the objections at that

16   time.  There's actually two sets of objections.  I put this on

17   the record because the second addendum says objections were

18   filed here and objections were filed there and that's the

19   reason for that.

20             THE COURT:  All right.

21             MR. CONVERY:  So I apologize.

22             THE COURT:  We're right back where we started.

23             MR. CONVERY:  So in the second addendum, the paragraph

24   that deals with my objection concerning restitution says, The

25   Probation Office just gets these and we can only give them to

1    the Court.  If you want to see them, you have to see them

2    through the U.S. Attorney's Office.

3             I didn't know that.  I mean, how would I know that?

4    So that's the situation.

5             THE COURT:  All right.

6             MR. CONVERY:  But the focus of the objection was on

7    the restitution, not that these people are victimized, not that

8    they're part of --

9             THE COURT:  What I can do is I can go forward with the

10   sentencing and simply reserve the restitution for another day

11   and in the meantime, you can review the victim impact

12   statements, if that's what you'd like to do.

13            MR. CONVERY:  When we get -- it's not the issue, I

14   would tell the Court in the sentencing.  It's not the issue,

15   but --

16            THE COURT:  Well, you objected to it, so it is an

17   issue.

18            MR. CONVERY:  Then I'll do that.  I'll take the

19   Court's time to do that.

20            THE COURT:  It's either one way or the other.

21            MR. CONVERY:  We can either put off the sentencing and

22   allow me to do it then or if the Court desires to go forward

23   with sentencing now and then put off the restitution issue for

24   a separate hearing, I have no objection to that.  At the same

25   time, I could probably take a few minutes and do it today.

1          THE COURT:  It's up to you.  What would you prefer to

2   do?

3          MR. CONVERY:  I prefer to do it today.

4          THE COURT:  All right.  So maybe we'll take a

5   ten-minute recess, you can look at these, they're not very long

6   and then we can proceed.

7          MR. CONVERY:  I apologize for any inconvenience, Your

8   Honor.

9          MS. RICHARDSON:  I'm good with that, Your Honor.

10         THE COURT:  You're good with that.  All right.  The

11  Court will stand in recess for about ten minutes.

12         COURT SECURITY OFFICER:  All rise.

13         *(9:16 a.m.)*

14                        *   *   *

15         *(9:29 a.m.)*

16         COURT SECURITY OFFICER:  All rise.

17         THE COURT:  Please be seated.  Just noticed our flag

18  is gone.  We're moving courthouses, so I think they took the

19  flags down to move them over to the new courthouse.

20         All right, Mr. Convery, you've had enough time to go

21  over those reports?

22         MR. CONVERY:  Yes, Your Honor.

23         THE COURT:  And you're ready to proceed?

24         MR. CONVERY:  Yes, Your Honor.

25         THE COURT:  On July 21st of 2021, the defendant was

S E N T E N C I N G                    7

1    found guilty by this Court during a bench trial of two counts,
2    of a two-count indictment.  One count charged receipt of child
3    pornography in violation of 18 United States Code, Section
4    2252(A)(a)(2) and 18 United States Code, Section 2252(a)(b)(1).
5    And count two charged possession of child pornography in
6    violation of 18 U.S.C. 2252(A)(a)(5)(b) and 18 U.S.C.
7    2252(a)(b)(2).
8          There were no findings of fact and conclusions of law
9    in this matter, which is what the Court would normally do,
10   because the defendant expressly waived that and the Court
11   simply found him guilty, as the jury would do without findings
12   and conclusions.  I will say, however, that the evidence in
13   this trial was overwhelming as to the defendant's guilt.
14   There's no question about that.  All right, so the Court adopts
15   the factual findings as contained in the report as to which
16   there are no objections and I'll rule on the objections as
17   follows:  Objection number one, counsel has objected to
18   paragraphs four, five and six.  In paragraph four, counsel
19   states the sexual assault charges investigated by the United
20   States Army Criminal Investigation Command were dismissed.  In
21   paragraphs five and six, the defendant believes the brief
22   summary of the text conversations between Song and Logo is
23   inaccurate and misleading as several conversations are part of
24   the single negotiation to obtain videos.  He states that Song
25   did not have child pornography on any other device and the

1  negotiation with Logo for child pornography only occurred over

2  one weekend.  They were uploaded and viewed for a minimal

3  amount of time and he paid less than 10 dollars for the photos

4  and videos.

5          Now, paragraph four was revised to include that the

6  original sexual assault charges were, in fact, dropped.

7  Paragraphs five and six were not revised and the Court is going

8  to overrule the objection.  The portion of the conversation

9  included in the PSR reflects the conduct of the defendant as

10  being charged with in the instant offenses and was found guilty

11  of, the inclusion of the conversation in its entirety does not

12  appear to be necessary as the ultimate result is that the

13  defendant negotiated and purchased child pornography which he

14  viewed and had on his cellular phone for his own viewing

15  purposes and pleasure.  So the objection is overruled.

16          MR. CONVERY:  Your Honor, do you want to wait until

17  the end of your rulings or do this on an objection by objection

18  basis?

19          THE COURT:  Well, your objection is already in the

20  record you filed extensive written objections.

21          MR. CONVERY:  I want to point out for the record that

22  what the Court is stating apparently comes from the Probation

23  Office, so I object to the summary of my objection that doesn't

24  include other things that were in the objection that are

25  factual.  That objection in writing is in the Court's file.  I

1    just need to note that for the record.

2            THE COURT:  Counsel, I have reviewed carefully your

3    full objection.  I didn't just review the summary.  The summary

4    that the Probation Office prepared is something which I have

5    reviewed and which correctly states my ruling on this.  I adopt

6    what they have said because they're correct.  That's all I'm

7    saying.  I haven't overlooked your documents.  I've reviewed

8    them.  I've got them right here.  I don't just review the

9    probation officer's summary, I never have.  I've been a federal

10   judge now for 35 years and nobody has ever suggested that I

11   short shrift the defendant by just simply adopting what the

12   probation officer -- in fact, I frequently don't adopt what the

13   probation officer has suggested and, in fact, I did so earlier

14   this week in a case where the probation officer said something

15   that I disagreed with.  So --

16           MR. CONVERY:  Well --

17           THE COURT:  I don't know what you're saying or what

18   your argument is here.

19           MR. CONVERY:  Well, I'm certainly not making a

20   suggestion that the Court is giving my argument short shrift.

21           THE COURT:  You've been in many sentencings with me,

22   so you know better.

23           MR. CONVERY:  Number two, I'm not making them.  That

24   wasn't the point and that's not the point.

25           THE COURT:  I don't know what your point was.

1          MR. CONVERY:  My point is that the Probation Office,

2     that in this completely administrative procedure, they take the

3     lawyer's objections which contain other important information,

4     they filter it for the Court.  All I really needed to know is

5     that the Court had read my complete objections and had taken it

6     into consideration.

7          THE COURT:  Well, I did.

8          MR. CONVERY:  But how would I know that?  With all due

9     respect.

10          THE COURT:  Because you know me, first of all.  You

11     have practiced before me for eight years that I've been sitting

12     here, number one.  But number two, I've never been accused of

13     in my entire career of simply taking the probation officer's

14     material and adopting it.  As I said, I frequently and I think

15     I have even with this probation officer disagreed with their

16     findings.  And I think Ms. Richardson has been in those

17     sentencings.  I read everything.  I read everything.  Plus

18     let's not forget I was the presiding judge at this trial and

19     heard all of the evidence myself and made my ruling, so I

20     understand that you might be -- that some lawyer who had never

21     appeared before me and if I was some rookie judge, maybe have

22     that concern, but I can assure you, Mr. Convery, that I have

23     reviewed every document in this case.  I've reviewed your

24     objections.  I was well aware of them and it just doesn't have

25     any merit.  You may disagree with me, you do disagree with me,

1  but that doesn't mean that I in some way, shape or form have

2  just simply done -- come up here to do some kind of a flippant

3  job.  That's not what has happened or has ever happened with

4  me.

5        MR. CONVERY:  Your Honor, I do wish, with all due

6  respect, after these many years, that you wouldn't characterize

7  it like that because that wasn't the objection.  Factual basis,

8  the offense conduct, there's information that didn't make the

9  summary that I thought was important to the probation officer's

10  determination and perhaps to the Court.  If I didn't make that

11  clear in the beginning, my first thing was did you want me to

12  wait until the Court ruled on the objections or did you want me

13  to do these individually.  But there's no suggestion about how

14  this Court conducts -- I have nothing but respect.

15        THE COURT:  That's why I said to you, counsel, that

16  you have filed extensive objections.  If I would have just read

17  this paragraph of theirs, I would not have made that comment

18  because I couldn't have made the comment, but I did read your

19  objections in their entirety.  So you thoroughly covered the

20  material.

21        Now, if you want to say something else for the record,

22  you know, you have to remember now that the Court of Appeals

23  because I -- you made it clear to me when you went to trial

24  that the purpose of going to trial was to reserve your

25  defendant's right to appeal, my denial of his motion to

1    suppress.  Now, you should know that the Court of Appeals will

2    get everything that is before the Court including your

3    objections in their entirety.  Right?  You know that.  So it's

4    not as if we're playing hide the ball here.  And you also know,

5    as a matter of fact, that I regularly sit by designation on the

6    United States Court of Appeals for the Ninth Circuit.  I have

7    for over 30 years.  And as a matter of fact, I am leaving

8    tomorrow morning to sit with them in Los Angeles to assist

9    them.  So I'm very well aware of the appellate process.  And I

10   approve of it and I have absolutely no problem at all

11   whatsoever with your appealing my ruling.

12            Now, do I think I made the right ruling?  Obviously.

13   If I didn't think I was making the right ruling, I would have

14   made another ruling, a different ruling.  And have I suppressed

15   evidence in the past?  Many times, many times I have suppressed

16   evidence even when the suppression of the evidence resulted in

17   the government having to dismiss the prosecution.  But in this

18   case, the evidence, the finding of the evidence was

19   consequential to a legitimate investigation.  And for the

20   reasons which I stated in my order, I did not believe that the

21   evidence should be suppressed.

22            Now, look, it's going to get appealed to a three-judge

23   panel of distinguished jurists.  They're going to take a look

24   at it and if they disagree, then they'll vacate his conviction

25   and remand it.  That's the way the system works and I believe

1   in the system.  Now, if I didn't think that they would affirm,

2   then I wouldn't have ruled that way, but that doesn't mean that

3   I'm -- you know, in the Ninth Circuit when I was there I had

4   one of the lowest reversal rates in that Circuit and I'm doing

5   okay here, but that doesn't mean I don't get reversed

6   occasionally.  And in fact, I've been reversed where the Fifth

7   Circuit has been reversed by the Supreme Court and my decision

8   reinstated.  That doesn't mean they're bad judges.  Maybe the

9   Supreme Court is wrong.  Who knows?  So anyway, that's my

10  ruling, all right?

11          The second objection, counsel objects to paragraphs 13

12  through 18 and 22 and 25, specifically all of the offense

13  characteristics.  He addresses each individually and concludes

14  the guideline range is unreasonable and seriously flawed.

15  Well, okay, I may or may not agree with you on that objection,

16  but it's not an objection really to the drafting of the

17  guidelines.  It's your objection essentially to what you

18  believe to be an appropriate guideline calculation based on

19  what you believe to be the severity of the crime.  It isn't

20  that the probation officer got it wrong.  There's no question,

21  I think, that with respect to all of them she got it right and

22  based on my review of the evidence and your objection.  So the

23  objection is overruled.

24          Objection number three, you object to paragraph seven

25  which is restitution in the case.  And that's where you

1    requested disclosure of the impact statements.  That's denied

2    as moot because you've had those.

3            Objection number four, counsel objects to paragraph 58

4    and 60.  He knows the defendant's indigent and objects to the

5    inclusion of any fine as part of the sentence.  I have no

6    intention of imposing a fine in this case because I agree with

7    you.  The defendant has more important financial obligations

8    and those obligations include restitution.  So I am going to

9    overrule that objection, but it's -- I don't know, it's not

10   really an objection, it's more of an argument.

11           Objection number five, counsel notes the factors that

12   may warrant a departure include age, lack of criminal history,

13   family circumstances and military service.  I agree with all of

14   that, but I don't know that that's really an objection to the

15   guideline calculation.  That's an argument to me as to what

16   kind of a sentence I should be imposing in this case.  So that

17   objection is overruled.

18           Objection number six, counsel objects to the loss of

19   two points for acceptance of responsibility.  He notes that the

20   defendant only moved forward with the bench trial in order to

21   preserve the motion to suppress on direct appeal.  Well, that's

22   all fine and good, but he maintained his innocence when the

23   evidence was that he was absolutely and clearly guilty, not

24   only beyond a reasonable doubt, beyond any doubt.  And

25   certainly that doesn't entitle him to acceptance of

1   responsibility.  And I don't, as counsel I think is well aware,

2   get involved in any way, shape or form in any type of plea

3   negotiations between the parties.  That is not part of my

4   purview.  And in fact, it's absolute reversible error for me to

5   involve myself in plea negotiations.

6           Objection number seven, counsel submitted additional

7   factors that may warrant a departure.  Again this is argument

8   to the Court.  It isn't really an objection to the calculation

9   of the guidelines, so it's overruled.

10          His criminal history category is one.  The

11  imprisonment range is 292 to 365 months, and each count carries

12  a maximum of 240 months.  There isn't a mandatory minimum here,

13  I don't believe is there.

14          MS. RICHARDSON:  Count two carries a mandatory minimum

15  of five years, Your Honor -- I'm sorry, it's count one.

16          THE COURT:  Count one, five years.  That's right.

17  Probation is not available, supervised release of five years to

18  life.  I forgot about the count one mandatory minimum.  Fine of

19  50,000 to $250,000 and a 100-dollar assessment per count.

20          COURTROOM DEPUTY CLERK:  The offense level is 40.

21          THE COURT:  The offense level is 40, I'm sorry.  All

22  right.  Mr. Convery or your co-counsel, I don't know whoever is

23  going to argue.

24          MR. CONVERY:  It's still going to be me, Your Honor.

25  The better lawyer, the colonel, is helping me with the trial

1    and I very much appreciate it.

2            THE COURT:  Well, I was only a company grade officer

3    when I was on active duty.  I never made it to field grade

4    because I got out.

5            MR. CONVERY:  I was only in the Navy a short time

6    myself.

7            THE COURT:  Go ahead, Mr. Convery.

8            MR. CONVERY:  I want to take the Court back for a

9    moment because it -- as you have carefully reviewed all the

10   material and it should have been apparent, but if not, I want

11   to make it apparent.  When I file my objections to the PSI, I

12   do objections, corrections, recommendations, okay.  So what's

13   characterized to you with respect to departures, E and F, I am

14   struck first by many, many, many, most, not all, of the draft

15   PSIs that I get they're blank in parts E and F, blank.  The

16   Probation Office says, well, I mean, that's basically my job to

17   provide them what those factors may be either for departure or

18   for sentence outside the guidelines.  And in this case I'm

19   going to ask the Court for a sentence outside the guidelines

20   and I'd like just a moment to explain why.

21           THE COURT:  What you're actually asking me for is not

22   so much a departure, is you're asking me for a variance.

23           MR. CONVERY:  I'm asking you for a sentence outside

24   the guidelines, whether the Court wants to characterize it --

25           THE COURT:  Because they're two different things.

S E N T E N C I N G                    17

1    It's not what I want to characterize it as.  They're actually

2    two different things and one is a variance and I think that's

3    what you're asking the Court to do is vary downward.

4            MR. CONVERY:  That's absolutely whether under whatever

5    moniker and whatever name that it needs to be, I'm asking for a

6    significantly more reasonable sentence in this case than is

7    called for by the applications of the guidelines that you just

8    found, level 40 and a criminal history category of one for a

9    sentence of 240 months based on the statute.  Your Honor, I

10   provided, and I rarely do this, I provided two articles to the

11   probation officer.  Again not for objections, but so that the

12   material would be considered and so that it would be a part of

13   the PSI.  I don't necessarily think the PSI was designed as an

14   adversary document.  I believe that and I've sat through

15   countless interviews where the probation officer tells the

16   defendant that they don't work for the prosecution, they don't

17   work for the defense, they work for the court, they're going to

18   be fair and right on down the line.  They want to put

19   everything that the defendant means to get across to the Court

20   and they want to put everything that the prosecution wants to

21   get across to the Court.  So some of my objections, some of the

22   information that I give to Ms. Holley is in order to accomplish

23   that so that the addendum will have the information that

24   essentially acts like a sentencing memorandum.

25            In this case, a sentencing memorandum to you would say

1    no more than is in those objections that you've characterized

2    as argument.  That is the sentencing memorandum.  I ask you to

3    please --

4            THE COURT:  Well, it is argument.  That's what you're

5    supposed to be doing.  You're supposed to be arguing on behalf

6    of your client.

7            MR. CONVERY:  And I am.  And I appreciate the Court's

8    attention to that.  But what's called the Troy Stabenow

9    article, *Deconstructing the Myth of the Guidelines*, I point out

10   in that argument it's well known within the legal literature

11   and within the courts, okay, Reviewing Circuit Courts who have

12   looked at the sentencing guidelines and the congressional

13   interaction as opposed to any empirical evidence from '97 to

14   the present have shown that it's congressional interference, if

15   you will, that puts everyone if not a first offender over a

16   weekend for less than ten dollars worth of child pornography at

17   what's essentially the max.  It's a statute now where the

18   guidelines give you no real guidance.  It's the max.  Almost

19   everyone is the max.

20           My objections in terms of the specific offense

21   characteristics, all of which are dealt with in that article or

22   many of them, there's always a computer, there's always certain

23   things.  If you have sex with toddlers, pictures with sex with

24   toddlers, it's always sadistic and masochistic.  These

25   things -- and it escalates things all the way to the basic

1    offense level itself, whereas in a drug case it's the amount of

2    the drugs.  In a child porn case, it's the amount.

3            This is a single kind of download of thumb nails of

4    videos.  So you take a very short three-minute video and you

5    break it into still photographs and it's an enormous, it just

6    reaches the max quite quickly almost all the time.  So over the

7    course of time, the last statistics I have between 2006 and

8    2016, it went from 20.8 percent of District Judges in

9    sentencings varied or gave a sentence outside of this

10   guidelines, to 2016, 45 percent, 45 percent.  It's a tremendous

11   number when one looks at it.  Because as I pointed out -- and

12   if I'm a bit touchy today it's because I end up, rightly or

13   wrongly, when I perceive the Probation Office as being another

14   adversary, then I feel like I'm fighting too many people all at

15   once.

16           THE COURT:  Well, let me tell you I've worked with

17   this probation officer for eight years and I have never found

18   her nor did I find her in this case to have taken a position

19   which would lead me to any concern whatsoever that she was

20   acting on behalf of the government.

21           Now, let me tell you something else.  When I was Chief

22   Judge of the District of Hawaii, there was an incident where

23   there was a probation officer who I felt was crossing the line

24   and becoming more of an advocate for the government than that

25   probation officer should have and I took appropriate steps to

 1   make sure that that stopped and it did.  I won't tolerate that,

 2   but as I said, I get the information from the Probation Office.

 3   Some of it is empirical, others isn't.  In this case, you know,

 4   I did not find that she was taking a position.  I did find, you

 5   know, the fact of the matter is that I sat through this entire

 6   trial, I was the one who made the decision and I went into it

 7   with an absolutely open mind.  And I have found defendants not

 8   guilty in bench trials where I felt the government simply had

 9   not proven its case beyond a reasonable doubt.  And in this

10   case, the government proved its case beyond any doubt, so she

11   didn't do anything here.

12        Now, if the evidence appears in her report to kind of

13   favor the position taken by the government, it's because that's

14   what the evidence said.

15        MR. CONVERY:  Well, I respectfully disagree.

16        THE COURT:  Well, I understand you disagree.  You're

17   representing your client.

18        MR. CONVERY:  No, it's more than -- I like to think

19   I'm a bit objective also.  I'm representing my client, but I'm

20   not here just to bark.  In other words, I believe in this

21   court, I believe in facts, I believe in being an officer of

22   this court and I have nothing but respect for you and I've

23   known Maria Holley an awfully long time.  I don't agree, but I

24   respect what -- and I'm not taking any -- I have no time or

25   inclination to make any personal attack at Ms. Holley, so if

1    that is the impression the Court has got --

2           THE COURT:  Well, I got the impression from your

3    statement that you felt that the report in this case was

4    one-sided and I don't think it is one-sided.  I do think that

5    the, unfortunately for your client, the facts do not support an

6    acquittal, but strongly supported a conviction and so she was

7    laying out the facts.  That's all it was.

8           MR. CONVERY:  Two things in particular.  With respect

9    to the motion to suppress and where I've made it readily

10   apparent what I want to do in the Court's opinion about

11   appealing the motion to suppress, the transcript in this case

12   will reveal that after a day long trial about the motion to

13   suppress the Court's comments on the record were I'm inclined

14   to grant this, I'm going to grant this, I can see me granting

15   this and suspending then for the second hearing the rest of the

16   motion to suppress.

17          After which time, the government raised good faith,

18   and good faith saved this search, okay.  I've read the Court's

19   opinion and good faith saved this search.  So the

20   characterization of what the search is all about, and I do

21   agree that the Circuit Court is going to make the ultimate

22   determination, but all this individual wanted to do, has ever

23   wanted to do was appeal that.  He's never contested his guilt,

24   the defense didn't put on any evidence, the defense barely

25   asked the government witnesses any question and we don't

1   quibble with the Court's finding or characterization.  The

2   objection was simply that when you do that for a legal reason,

3   should you be denied the two points for acceptance of

4   responsibility.  I accept the Court's thing.  What I don't

5   appreciate is the inclusion of what the government says is plea

6   negotiations between the defense and the government and I'd

7   like to have that stricken from the addendum and not appear in

8   the report.  And I'd like the Court to say I'm not going to

9   consider that at all because I don't think it's appropriate --

10          THE COURT:  I didn't consider -- I never consider plea

11  negotiations.  I didn't know about -- I didn't even know there

12  was any plea negotiations until I started getting ready for the

13  trial.

14          MR. CONVERY:  Okay.  Well, I object to that part of

15  the addendum to the report.

16          THE COURT:  But it doesn't make any difference

17  because --

18          MR. CONVERY:  I still object.  I'd like a ruling on it

19  because that's what the Rules of Evidence are and that's what

20  the Circuit says.  I'm trying to be -- I understand --

21          THE COURT:  I have no problem at all directing that

22  that be stricken from the record.

23          MR. CONVERY:  Thank you.

24          THE COURT:  Because I didn't consider it anyway.  It

25  doesn't make a bit of difference to me.  The only thing I was

1    concerned about at the trial was what was the evidence.  And as

2    you have conceded, the evidence supported his conviction, on

3    the evidence, okay?  Now, your position is different with

4    respect to the motion to suppress.

5              Now, I think any comments that I may have made in

6    going up to my final ruling were honest comments made at the

7    time based upon the record at that time.  And to be honest with

8    you, yes, there were some concerns that I did have about the

9    method in which the evidence was obtained, but, but in

10   reviewing all of the evidence again, as I point out in my I

11   think rather comprehensive order which I always put out -- I'm

12   not one of these judges that just simply says, based upon the

13   facts and the rulings, the motion to suppress is denied.  I see

14   that all the time.  I think it's totally unfair to the

15   defendant.  I think it's unfair to the government and I also

16   think it's grossly unfair to the Court of Appeals.  And a lot

17   of judges have told me over the years that I'm nuts for writing

18   these comprehensive orders because it gives much more

19   opportunity for the Court of Appeals to pick apart my ruling.

20   Good.  They should have that opportunity.  They should have the

21   opportunity to know and see why I ruled, why I took a position.

22   And if that means that I get reversed, then that's what it

23   means, then I deserve to be reversed.  But to hide the ball is

24   not in my view the right way for a judge to behave.  I believe

25   in the Court of Appeals.

1          Now, with respect to your concern that somehow I have

2    seen this and it's somehow going to sway me in some way, I've

3    been at this a very long time, as you know, this isn't swaying

4    me one way or the other.  There are frequently in criminal

5    cases plea negotiations that go south.  Doesn't mean anything.

6    Nothing at all actually.

7          So do you have any other argument on behalf of your

8    client?

9          MR. CONVERY:  I do, Your Honor.

10         THE COURT:  All right.  Go ahead.

11         MR. CONVERY:  What I really was getting into is that

12   the items that you've talked about in the objections, I move

13   and I'm asking you to consider those for a variance in this

14   case.

15         THE COURT:  I understood that.

16         MR. CONVERY:  I want to add what the defense has

17   provided, Dr. John Fabian's kind of psycho sexual kind of

18   review in a forensic sense to where the doctor's --

19         THE COURT:  Yes, let me tell you something, I reviewed

20   that too and I am well aware that I believe he said it was

21   something like ten or eleven percent chance of him being

22   recidivist or very low likelihood of recidivist, is that right?

23         MR. CONVERY:  It's very low and actually the

24   statistics bear out even less than that.

25         THE COURT:  All right.  I reviewed all this stuff,

1   Mr. Convery.

2          MR. CONVERY:  I'm urging it simply as a reason.  I

3   appreciate the fact the Court has reviewed it, that the Court

4   has reviewed the family history, which I think is common, but

5   unique, significant in terms of immigrant family from Korea who

6   come to the United States and with their nose to the grindstone

7   continue to work and work.  The military service, we know that

8   it's this aspect, it's this item that destroys that dream and

9   it's his fault in the sense of the sexual assault that was

10  being investigated was consensual.  The reason for wanting the

11  accuracy of the facts was to show that it was not a sexual

12  assault.  There was no sexual assault.

13         THE COURT:  I don't think the government takes that

14  position, but I'm sure we'll hear from counsel.  I didn't find

15  him guilty of sexual assault.  That wasn't part of the trial.

16  I didn't take it into consideration, except for the fact that

17  it provided the context in which the phone was searched.  I

18  mean, obviously that was part of it.

19         MR. CONVERY:  Yes, the character letters which I think

20  are truly heartfelt --

21         THE COURT:  I've seen those.

22         MR. CONVERY:  -- honest with the Court about those

23  aspects of things.  I think that I want to talk very briefly

24  about factually in this case the defendant was arrested in

25  February, the PSI I think now reflects the correct dates, based

1    on the seizure of the phone and the finding of the snippet or

2    the thumbnail of the child pornography offense well before any

3    forensic review of the phone.  So the defendant was placed in

4    Geo in February of 2019.  The defendant was in Geo for some

5    eight months because the Magistrate Judge believed that he

6    should get a bond, but didn't know what the military was going

7    to do.  And so he was in Geo for that time.

8            When the military kind of administratively processed

9    him out of the military, the Magistrate Judge had already

10   determined the release was appropriate, so he was released.  He

11   went back during the peak, if you will, of COVID to Maryland to

12   his parents' house where he was incredibly restricted in terms

13   of -- it was released essentially to his parents' house.  And

14   what I mean by that is he wasn't allowed in the backyard.  He

15   was in the house.  Within the military, military judge would

16   find that to be confinement and give credit for it.  I'm asking

17   the Court to consider that, to consider both COVID and that

18   issue of, you know, not being able to assist his parents, not

19   in terms of working for the family, in terms of being

20   supportive and having to be supported himself and being

21   extremely restricted.

22           I am asking the Court to consider abhorrent behavior

23   in this case, that there's no evidence of any ongoing activity,

24   no evidence of past activity save for one comment during the

25   negotiations over, Well, how do I know?  I haven't seen them

1   before.  The objection that had to do with the complete

2   negotiation between Logo and then PFC Song, Specialist Song.

3            THE COURT:  Didn't he return, he had returned one he

4   had already seen?  Am I wrong here?

5            MR. CONVERY:  You've already overruled that objection

6   which was to the enhancement that's for transfer for a thing of

7   value, under the idea that during these negotiations that Logo

8   sends him some thumbnails which he perhaps -- we don't even

9   know if he reviews a couple, all of them forensically, but he

10  sends them back.

11           THE COURT:  Because he's allegedly already seen them,

12  so it doesn't -- that isn't consistent with this is the first

13  time.

14           MR. CONVERY:  That's not -- that's not what the facts

15  reveal.  The facts in this case do not reveal to this Court,

16  any reasonable person, that there has ever been another time

17  except for a comment in terms of the thumbnails that How will I

18  know if it's things I haven't seen before.

19           And there's some other comments about the quality of

20  the photographs.  And all this back and forth happens very

21  quickly.  I wasn't even objecting --

22           THE COURT:  I was just -- Mr. Convery, excuse me, I

23  was just addressing your comment when you said there was

24  nothing to suggest that he had ever done this before.  Well,

25  there is something to suggest he had done it before.

1          MR. CONVERY:  Okay, Your Honor.  My other reasons

2    other than COVID, the incarceration, I'd like him to get credit

3    for the time periods of incarceration.

4          THE COURT:  Well, as you know -- I assume what you're

5    asking me to do is to take into consideration as I'm sentencing

6    because you know full well that I can't assess credit.  That

7    has to be done by the Federal Bureau of Prisons in the first

8    instance.

9          MR. CONVERY:  I am absolutely asking you to take into

10   consideration in terms of fashioning a reasonable sentence.

11   And whether we call it a variance or whether we call it a

12   sentence outside the guidelines, I call it a sentence outside

13   the guidelines.

14         THE COURT:  Okay.

15         MR. CONVERY:  Whatever the Court would like to call

16   it, Mr. Song is desperately in need of it.  As a first-time

17   offender with a criminal history category one, the overarching

18   objection throughout my objections was that the proposed

19   sentence is unreasonable.  It may meet the technical

20   requirements of a guideline that has been designed with no

21   empirical basis, none.  That's designed to provide the Court

22   with a calculation that arrives at the max.  Well, we're there.

23   And I would suggest that his age, his lack of criminal history,

24   his family circumstances, his military service, the whole COVID

25   involvement in this case for this particular defendant, his

1   extreme conditions of release from incarceration and 5K2.20
2   abhorrent behavior policy provision, I think is entirely
3   appropriate to warrant a sentence significantly less.  The time
4   period is there, the short duration of this.  Again we're
5   talking about conduct that's going to be -- or that the issue
6   could be greatly expanded by a comment that the defendant made.
7   Nothing was on any of the other devices, nothing to indicate
8   there was any other child pornography anticipation.  No
9   investigation results to anticipate that there was any other
10  child pornography event or example.

11          The prosecution is now going to point out the same
12  comment, the same comment.  And one of the things that didn't
13  make it to the facts of the PSI that was in my objection was
14  where I got this information about the bickering back and forth
15  in the negotiations was from the government's findings of fact
16  that were submitted to the Court.  I rather think that's
17  significant, only in the sense of why I believe that a variance
18  in this particular case is warranted and necessary to do
19  justice to be reasonable.  There is no question that he's going
20  to serve time.

21          Now, the final thing I'd like to leave the Court with
22  and I can get back up only to make a recommendation in terms of
23  incarceration, but this Court through its years of experience
24  knows and has watched grow, especially in child pornography
25  case, those conditions of supervised release and special

1   conditions of supervised release are going to be imposed for

2   many years, five, life, whatever the Court determines, this

3   individual, this first offender is going to be supervised for

4   many, many years, subject to evaluation.  You know, definitely

5   requires treatment, programs, treatment.  Let alone I want to

6   address the restitution issue.  The restitution, no one, no one

7   would question the victimization of the girls, either at the

8   hands of their own family or other people.  No one would

9   question far down the road these people, most of them are 18

10  years old or more.  No one would question the propriety of

11  restitution.  The minimum of restitution that the probation

12  office gets in these cases is $3,000.  We would object to

13  anything more than $3,000.

14        I've now reviewed all those documents and the amounts

15  requested bears no relationship to the particular case, to this

16  particular case to the amount of time that he viewed it or to

17  what he did with it, because this is only a receipt and

18  possession case.  So to suggest that because the plaintiff's

19  attorney suggests that they want 10,000 in this case or that

20  they're asking for -- another is asking for 10,000, one is not

21  asking for anything, so the Probation Department is prepared to

22  say, well, the minimum there ought to be $3,000.  At most, the

23  Court should take the victims in this case and provide them

24  with the $3,000 in each instance.  Having done that, the Court

25  should also rule, we would ask, that the Court recognize that

1    with a lengthy, even a five-year supervised release to allow

2    the defendant to pay that over time throughout -- some during

3    incarceration, but throughout his supervised release before it

4    becomes a matter for collection or a judgment on the part of

5    the Collection Department of the United States Attorney's

6    Office.  That will do the most to hopefully try to ensure that

7    the victims get some restitution from Mr. Song.  It's a

8    mandatory act, I'm not quibbling about that, but I do think

9    that what's more appropriate, what's justified, one could look

10   at these things and make -- take a position that a particular

11   amount in this case is just not justified by what's submitted

12   at all.  But the victim impact statements are heart wrenching,

13   I understand the victimization and respect the fact that the

14   act says the Court should impose some kind of restitution.

15          After his incarceration in Geo and going home, Hae

16   Yeong Song has demonstrated both before this event and during

17   this event that he's able to follow the rules, that's both

18   inside the facility and outside the facility and coming back

19   and forth to San Antonio.  He was 26, I believe, at the time of

20   this incident, 25, 26.  I think that's significant.

21          I ask the Court to take all of those things and I

22   really do -- I've appeared before this Court on many, many

23   times and I have nothing but respect for this difficult task

24   that you have before you, but I ask you to in this case temper

25   justice with mercy and understand that for a first offender

1  with no criminal history, the max is just absolutely not the

2  appropriate sentence.  I would respectfully submit that the

3  mandatory minimum is the appropriate sentence, that that makes

4  more sense than both empirically with the information that's

5  been provided to the Court.  Thank you very much.

6           THE COURT:  Does Mr. Song wish to address the Court?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  All right.  You can take your mask off,

9  Mr. Song, because otherwise the reporter isn't going to be able

10 to understand you.

11          THE DEFENDANT:  Good morning, Your Honor.  To add on

12 to what Mr. Convery was saying, I just ask that the Court does

13 consider everything that has to do with the case, that my life

14 currently is in your hands, so I ask that you show mercy so

15 that I can go from this into turning my life into a better

16 outcome towards the end of it, not define my life from the

17 events that led to this current moment.  I'm more than willing

18 to do everything I can, taking programs, taking all the

19 educational opportunities to try to make up for everything, all

20 the mistakes I've made in my life.  Thank you.

21          THE COURT:  All right.  Okay, Ms. Richardson.  It's

22 your opportunity.

23          MS. RICHARDSON:  Not one word has been spoken by the

24 defendant today or apparently when he talked to Dr. Fabian

25 about his acknowledgment, his remorse for the violent, horrific

S E N T E N C I N G                    33

1    abuse of the children whose crime he actively, intentionally,

2    purposefully, selectively participated in.  So if I'm a bit

3    touchy this morning, it's because when we begin to engage in

4    relegating the exchange of material that memorializes the

5    sexual assault of children to a comparison of the distribution

6    of narcotics, it makes me a bit touchy.

7            Federal District Judge John Adams in United States

8    versus Cunningham used a quote that is attributable to Nelson

9    Mandela, *"There can be no keener revelation of a society's soul*

10   *than the way in which it treats its children."*  The judge went

11   on to say, *"Given the statistics surrounding child pornography,*

12   *we are living in a country that's losing its soul."*  Because

13   how is it when we speak in public about the horrific crimes

14   that are happening to children and they're not just happening

15   to those children one time, they are being videotaped, audio

16   recorded, uploaded into a system that now is forever

17   memorialized.  They are then traded and trafficked at the same

18   level as baseball cards.  But then we come into court and

19   something changes and all of a sudden it's a mere couple of

20   videos and photographs over a weekend.  The government

21   strenuously objects to any downward departure because this is a

22   crime of violence and it should be treated accordingly.

23            With regards to the repetitive use of the reference

24   that this only occurred over a weekend -- and Dr. Fabian's

25   report and his conclusions should be completely discounted

1    because that's based on the self-reporting, the self-disclosure

2    of the defendant who also keeps saying, Well, it was just a

3    couple videos, it was just ten dollars.

4            Honestly, the fact that it was only ten dollars is

5    even more repulsive to me than if it had been $10,000.  But if

6    the Court will recall from Government's 12A during the trial,

7    which was the transcript of the Instant Messages that were

8    going back and forth between the defendant and the Korean

9    distributor, on the platform of Telegram, the very first entry

10   is actually from the defendant.  And he says to the individual,

11   *"Mr. Hush 18?"*

12           And the other guy says, *"Yes."*

13           He says, *"Is Tumbler deleted?"*

14           The other guy says, *"Yes."*

15           He says, *"Why?"*

16           Mr. Hush 18 says, *"I don't know."*

17           He says, *"Wonder if someone reported it."*

18           The Court will recall that the expert, Special Agent

19   Jeffrey Cunningham, talked about the fact that Tumbler which

20   had been actively trading child pornography had been taken

21   down.  Mr. Hush 18 had been a part of that.  The defendant knew

22   that.  This was not his first moment in the midst of all this.

23           Then there's multiple pages going back and forth

24   discussing whether or not how many pictures and how many videos

25   he can get, specifically asking for elementary age children,

1   specifically asking for Korean children, not American children.

2   There's even a discussion where Mr. Hush 18 reminds him, *"You*

3   *could get in trouble, it's illegal in America."*  He says, *"Only*

4   *if I get caught."*  He knows what to do with it.  This is not

5   his first foray.

6          He then begins discussing -- he receives a video and

7   he tells Mr. Hush 18, *"The first video was about someone saying*

8   *a capture of an interaction with a boyfriend.  The second that*

9   *was sent contained the first reporting.  Wondering if there are*

10  *videos that connect with this one."*

11         He's watching them close enough to be able to tell

12  that the clip he got has a part two and a part three.  That's

13  why NCMEC has identified entire series.  Why?  Because once you

14  watch the first one, you're going to go look for part two and

15  part three.  He knew that.  He tells Mr. Hush 18, *"I just*

16  *watched one.  It's only ten seconds of taking off clothes."*

17  And then he asks for only Koreans.  He then begins to discuss

18  with Mr. Hush 18 whether or not he's going to get the Legend

19  video.  Individuals actively engaged in the trading and

20  collection of child pornography know that the Legend video is a

21  compilation of some of the most horrific video footage.

22  Mr. Hush 18 informs him, "That one is expensive."  But he wants

23  it included in his collection.  This is not a person that has

24  only engaged in this activity for one weekend.

25         MR. CONVERY:  I'm going to object to the testimony of

1   the assistant U.S. attorney and ask that that be stricken and

2   the Court not consider it, although the damage is done once she

3   testifies.  She has testified.  Nothing in the transcript,

4   nothing in that highly prejudicial statements that she just

5   made other than her own opinion is available.

6          THE COURT:  She's making argument.  Argument is not

7   evidence.  I heard the evidence, I saw the evidence.

8          MR. CONVERY:  And the ruling on my objection?

9          THE COURT:  I'm going to overrule your objection.  She

10  has the right to make her argument.  I will disregard it if I

11  think it's impertinent.

12         MR. CONVERY:  I specifically object to that if you're

13  not going to disregard it, then you're going to consider it.

14         THE COURT:  No, I'm not.

15         MR. CONVERY:  Well --

16         THE COURT:  I'm going to consider that she's made an

17  argument, she's entitled to make an argument just like you are,

18  counsel.

19         MR. CONVERY:  She clearly testified.  That's the

20  defense objection.

21         THE COURT:  I don't think anything that she says here

22  which is not under oath is testimony.  She's making an argument

23  to me, counsel, and you're entitled to make an argument.  She's

24  drawing an inference from what she believes the evidence

25  showed.  That's all she's doing.  And I may agree with it or I

1    may not agree with it.  Go ahead, counsel.

2            MS. RICHARDSON:  With regards to Mr. Convery's

3    comments and submission of the Stabenow articles, the 2009 is

4    his attack, attacking a federal public defender on the

5    guidelines.  His 2011 is a proposal for reform.  The

6    legislature has looked at and reformed and modified legislation

7    on a number of occasions since 2011.

8            THE COURT:  And going back to your previous objection,

9    Mr. Convery, you've submitted to me and I've looked at

10   materials which were completely outside the record and really

11   have nothing in direct -- there's no direct connection with

12   this case.  But they're argument just like she's making

13   argument.  So you can't say to me, Judge, I want you to look at

14   these articles written by a federal defender on one hand and

15   somebody else that urge you that the guidelines are, you know,

16   completely out of control, and on the other hand she draws an

17   inference from the evidence and I'm not supposed to consider

18   that.  I'm supposed to consider yours, but not hers.  I mean,

19   it is what it is.  The Court looks at everything submitted by

20   counsel.  I recognize that counsel are advocates for their

21   clients.  You're advocating for your clients, you're taking the

22   very best position you can and you're submitting the materials

23   to me and I, in this case and in every case, will look at it.

24   Some of it might inform me, others might not.  Just because

25   somebody says it doesn't mean I believe it or will take it into

1    consideration.  Go ahead.

2              MS. RICHARDSON:  Since the publishing of both of those

3    articles, Congress has had an opportunity and has, in fact,

4    revised statutes in this area.  They have had all of the data,

5    all of the information brought before them.  The Fifth Circuit

6    has also spoken to these very articles and the argument about

7    the guidelines and whether or not they are based upon empirical

8    data and whether or not that is relevant to the consideration.

9    Recognizing that they are advisory, but that they are advisory

10   based upon direction that they have received.

11             With regards to Mr. Convery's statement that all of

12   the defendants that are prosecuted for receipt of child

13   pornography and possession of child pornography coming out at

14   the max, that's absolutely just not true.  And it is not true

15   that all defendants should be at the maximum.  In fact, if you

16   consider taking a defendant charged with receipt of child

17   pornography, on the one hand you can have a defendant who has

18   downloaded photographs of a 17-year-old female in a situation

19   that qualifies as child pornography.  If she's not -- if

20   there's no bestiality involved, there's no torture involved,

21   it's not done for the exchange of money, the guidelines on that

22   are going to be on the low end at the statutory mandatory

23   minimum.  That's provided that the defendant has no criminal

24   history.  That is totally different from what we have here.

25   The enhancements are in place and oftentimes in this courthouse

1    the cases we see are the ones that have all the enhancements.

2    That's because, as everyone knows, federal resources are finite

3    and the cases that we prosecute are the ones that oftentimes do

4    have all the enhancements, but that is not to say that every

5    single defendant that commits the crime of receipt of child

6    pornography is going to come out at a 240-month guideline.

7          The guidelines in this case, this case absolutely

8    calls for the application of those guidelines.  There's no

9    argument that can be made on any of those adjustments that

10   would bring it to a place of them not being applicable.  And so

11   he guidelines out because that's the crime he committed.

12         Despite Song's efforts to minimize his crime and his

13   lack of recognition of the nexus of his crime, small children

14   being brutalized, he has participated in one of the most vile

15   and heinous crimes in our society.  The Supreme Court, Congress

16   and courts across the country have repeatedly recognized the

17   pain and suffering caused by the sexual exploitation of

18   children and a sentence of 240 months addresses the severity of

19   his crime.  While nothing makes these children whole for being

20   subjected to the pain that they've been subjected to and the

21   suffering at the hands of perpetrators like Song where every

22   single day wherever they go for the rest of their life they are

23   always wondering, Has that person seen me in my most horrible

24   moment.

25         A severe sentence at least gives those victims the

1   comfort that at least this defendant will not be downloading

2   and trading their pain like baseball cards for a very long

3   time.

4           THE COURT:  All right.  You know, these are always

5   very difficult cases principally because of -- obviously

6   because of the subject matter of the cases.  And I think we as

7   a society certainly have a strong feeling about any type of

8   injury to children and this is certainly the kind of injury to

9   children which is most concerning, to put it mildly.  And

10  unfortunately, what drives child pornography is the desire of

11  individuals such as the defendant to observe it, to view it.

12  It's very much in a way, although I do not draw the parallel

13  between drug trafficking and child abuse in a direct line, but

14  we know that there would be no drug trafficking if there were

15  not individuals who were willing to purchase drugs and to fund

16  their consumption because there would be no market for drugs.

17  And we also I think know that to a large extent there wouldn't

18  be the tremendous uptick in child pornography if there weren't

19  individuals like the defendant who were interested in

20  purchasing these pictures and/or trading them for remuneration

21  in some way, shape or form.  There just wouldn't be the market.

22          Now, does that mean there wouldn't be people who abuse

23  their children or abuse other children for their own pleasure

24  and might video it and put it up online?  Yeah, sadly I think

25  that would still occur to some degree, but certainly not to the

1    degree that we see it now.  I think that this has become a

2    profit-driven situation to some degree.  I mean, Mr. Song paid

3    for his images.  The individual who got them obviously got them

4    and in all likelihood through some transactions that he made

5    and then he's reselling them because he obviously wasn't the

6    one who was the perpetrator in all of these videos.  These were

7    all individual different people over time.

8             Sadly, one of my responsibilities at a trial like this

9    is to view the evidence, so I have seen these videos, because

10   the government has to prove beyond a reasonable doubt that

11   these are, in fact, child pornography.  And as Ms. Richardson

12   can attest, there have been child pornography cases where the

13   government has submitted to me videos and/or pictures or maybe

14   it was your colleague, I can't remember, where it was really

15   impossible to tell whether these were juveniles or not.  They

16   looked like adults.  Their physical characteristics would have

17   been the characteristics of an adult.  And in those instances,

18   not that I condoned those videos or the pictures in any way,

19   shape or form, but they simply could not be child pornography.

20   That was not the case in any of these images.  These were

21   clearly young children, very young in many instances.  And

22   these children were in some of these videos obviously being

23   raped and worse and it was hard to watch, there's no question

24   about it, it's difficult.  And I think that defense counsel

25   doesn't contest that, I'm sure.  That's just the way it is.

1           Now, one of my responsibilities under 18 U.S.C.

2    3553(a) is to look very carefully at the so called sentencing

3    factors as laid out there and I'm not going to read them off

4    here.  Suffice it to say that I know what they are by heart and

5    I look at them very carefully.  As my friend former Justice or

6    retired Justice Kennedy and I having lunch, I said, you know, I

7    said to him when we were -- when we're looking at these

8    guidelines -- because he had written several of the guideline

9    opinions when this whole guideline situation was being flushed

10   around.  I've been around long enough to have been around

11   before the guidelines and then when the guidelines were

12   mandatory and now when they're advisory.  He said, You know,

13   the bottom line is that a District Judge -- and he even wrote

14   this in an opinion -- a District Judge should look at the whole

15   person, the whole person.  Look at the offense, look at the

16   circumstances, look at the whole person.

17           One thing I can't do and I don't do is sentence for

18   rehabilitation purposes.  That's not part of the sentencing

19   guidelines, but the crime here is serious, there's no question

20   about it and he's guilty of it.  And he, as counsel has

21   suggested, has got to serve a prison term for it.  I have to

22   say, however, that there are degrees of culpability in the

23   process.  I mean, it isn't one fits all.  That's why we have

24   the guidelines and that's why the judges were given the

25   discretion and the Supreme Court said it was constitutionally

1    imperative that we do have discretion to vary.  And it's also

2    important to remember, and I think we often forget this, that

3    the guideline range is an advisory range and it is a fatal

4    error in sentencing for a judge to take the guideline range and

5    look at it as more important than any of the other factors.  It

6    is a starting point, as the Supreme Court has pointed out and

7    the Fifth Circuit, but it is not a factor which should be given

8    some greater weight than all of the factors taken together.

9           Now, it happens that a lot of time and effort was put

10   into creating these guidelines and frequently I find that a

11   sentence within the guidelines is an appropriate sentence, but

12   it's because I have looked at the conduct and the 3553 factors

13   and determined that a sentence within the guidelines is an

14   appropriate sentence and not because I simply accept the

15   guidelines as some sort of mandatory place in which I have to

16   sentence the defendant, because it isn't.  There's nothing

17   mandatory about the guideline range.  I look at all of the

18   factors and I have to make a determination as to the

19   defendant's conduct when placed against all of the other

20   factors starting with the guidelines, but not ending with the

21   guidelines as a mandatory set of parameters which the Court

22   must sentence the defendant within.

23          And it's also important that the Court sentence the

24   defendant to an appropriate sentence which is not more serious

25   in terms of its imposition than is called for to follow the

S E N T E N C I N G                    44

1   very careful outline of the 3553 factors.

2           Now, this defendant engaged willingly in the purchase

3   of the material which is clearly and absolutely child

4   pornography and some of it of the worst order and so he is

5   going to serve a very serious sentence as a result of that.

6   And looking at the 3553 factors, he deserves such a sentence.

7   However, however, the Court does not believe that a sentence

8   within the guidelines here is appropriate.  It is just simply

9   too long under all of the 3553 factors to address the conduct

10  for which the defendant himself was found guilty.  Not because

11  I think that the images weren't horrific, they were.  And not

12  because I don't think the defendant deserves a serious

13  punishment, which I do, but because within the 3553 factors and

14  looking at the parameters of what is statutorily possible in

15  this case, the defendant simply doesn't meet the criteria for a

16  sentence which is over 20 years.  It just is too long a term of

17  imprisonment and is harsher than what is called for to meet the

18  ends of justice, in my view.  Now, that doesn't mean, as I

19  said, that he is entitled to some sort of menial sentence

20  because the conduct that he engaged in was serious.

21          So it is the judgment of this Court, having carefully

22  and thoroughly considered the 3553 factors, the evidence in

23  this case, the arguments of counsel, all the materials which

24  have been submitted by counsel for both sides, that as to count

25  one the defendant is to serve a term of imprisonment of 170

1    months.  As to count two, 60 months, which will run

2    concurrently for a total of 170 months which is, I don't know,

3    how many years, 14 years.  That is an adequate sentence here to

4    serve the interest of justice.  Anything longer, in my view,

5    would be not an appropriate sentence given his age and the

6    total circumstances.

7              Now, of course, had he encouraged or engaged in the

8    actual production, that would have been another story entirely.

9    And I have myself sentenced individuals to life in prison who

10   have engaged in that kind of behavior.  There is no term of

11   imprisonment which is long enough for those people, but this is

12   a fair sentence in my view.

13             Now, as to supervised release, I am going to impose a

14   ten-year term of supervised release upon the defendant and that

15   will be consistent and incorporate the terms of supervised

16   release as laid out in this Court's amended order of

17   November 28, 2016, and the specific terms as laid out in the

18   presentence investigation and report which I hereby adopt and

19   to which counsel has indicated they've had a chance to review

20   with their client and have not filed any objections to.

21             Looking at a fine, the defendant does not have the

22   money to pay a fine at this time and, therefore, the Court will

23   not impose one.  He must pay the United States a special

24   assessment of $100 per count for a total of $200.  The Court is

25   going to impose restitution to each of the victims in the

1    amount of $4,500 per victim.  I believe that given the

2    defendant's earning potential when he gets out and during the

3    term of supervised release, that is a sum of money which he can

4    repay and that money is due immediately.  Of course, he doesn't

5    have it now, so it will be paid in such terms as the defendant

6    can amount during his -- do we have to set a payment schedule

7    for that restitution?

8              PROBATION OFFICER:  Not at this time.

9              THE COURT:  Now, you did preserve your right of

10   appeal, Mr. Song, so you have the right to appeal both the

11   conviction, my denial of the motion to suppress and the

12   sentence which I have just imposed upon you to the United

13   States Court of Appeals for the Fifth Circuit by filing a

14   notice of appeal within 14 days of the entry of judgment.  If

15   you don't have the assets to pay for all or part of the costs

16   of an appeal, including the services of competent counsel and

17   transcripts and other materials for your appeal, that will be

18   provided by the Court at no cost to you.  And I assume,

19   counsel, you're going to be -- are you going to be representing

20   him during the appeal?

21             MR. CONVERY:  No, Your Honor.  May I address the

22   Court?

23             THE COURT:  Sure.

24             MR. CONVERY:  I had prepared a written notice of

25   appeal, I'll give oral notice of appeal at this time for record

1    purposes.  I've obtained the defendant's signature, we will

2    electronically file it today and we will also file a motion to

3    withdraw.  Different eyes need to look at this, Your Honor.

4    Mr. Song and I have talked, I took this case over from a

5    court-appointed counsel, the financial statements already on

6    file and I would ask the Court to appoint him with CJA counsel

7    or the Federal Public Defender's Office.

8         THE COURT:  I will refer that matter to the United

9    States Magistrate Judge for appointment of counsel.  I'm going

10   to grant your motion to withdraw subject to your perfecting his

11   right to appeal and making sure that there's no lapse so that

12   his documents and so forth are filed on time.

13        MR. CONVERY:  I represent to the Court that I will

14   follow through and I will make sure that that happens.  I would

15   also ask the Court, this is a unique case because of his

16   military service.  The family is on the east coast, sister on

17   the west coast.  I've conferred with Mr. Song and we would ask

18   the Court to recommend Butner, it's not just the federal

19   medical facility, it's also a facility that has had the sex

20   offender kind of treatment programs.

21        THE COURT:  I'll recommend Butner.

22        MR. CONVERY:  Or Fort Dix.  Those would be within the

23   BOP's 500-mile rule in terms of his parents' ability to visit

24   with him.

25        THE COURT:  I'll make that recommendation, I have no

S E N T E N C I N G                    48

1   problem.

2            MR. CONVERY:  Thank you.  There's Fort Dix, Low --

3            THE COURT:  I'm also going to recommend that he

4   receive mental health treatment during his incarceration so

5   that he can deal with these issues.

6            MR. CONVERY:  He'd like any educational or support --

7            THE COURT:  I'll recommend that.

8            MR. CONVERY:  -- treatment options, but it's Fort Dix,

9   Low, Butner, Low.  The Court will recall I think were it not

10  for the statute at the guilty finding before sentencing, before

11  the PSI, were it not for the statute, the Court did not appear

12  to have a problem with him remaining on pretrial release.  We

13  understand that's not the circumstances, we're not asking for

14  any such thing, but I think it certainly merits a

15  recommendation for Court for low category if the Bureau of

16  Prisons does classification degrees.  Thank you.

17           THE COURT:  All right.  Anything else, counsel?

18           MS. RICHARDSON:  Your Honor, for the record, can the

19  judgment reflect the forfeiture consistent with the preliminary

20  order contained in document number 109.

21           THE COURT:  The judgment will so reflect.

22           MS. RICHARDSON:  Thank you.

23           MR. CONVERY:  Does that include -- just for -- there

24  were some electronics items that had no child porn that have no

25  relation to the case and we'd like to have those returned.

1          THE COURT:  Whatever doesn't have any relationship to

2    the case or is not evidence can be returned to the defendant.

3    And the Court finds that outside of the defendant's future

4    earning capacity for restitution purposes, that he does not

5    have sufficient funds to pay the JVTA here, so I'm not going to

6    impose it.

7          I'm sure that counsel can work this out.  I don't need

8    to be involved.  If you can't work it out, then you can contact

9    me and I will take a look at it and see.  I mean, the

10   government is entitled obviously to keep those materials and

11   needs to keep those materials which may be germane for appeal

12   purposes or for the Court of Appeals or -- I'm certainly not

13   going to turn back any material that might in some way, shape

14   or form contain child pornography, but otherwise, other

15   material that doesn't have any relevance to the prosecution but

16   may have been seized by mistake or for some other purpose for

17   investigative purposes should be returned.

18         MS. RICHARDSON:  I'll find out what else there is

19   because the only thing that's on the forfeiture list is germane

20   to the case.

21         THE COURT:  Yes.

22         MR. CONVERY:  Thank you, Your Honor.

23         THE COURT:  I should make it very clear that there are

24   probably very few judges in this country that have had more of

25   these kinds of cases, had to handle more than I have.  I have

S E N T E N C I N G                                50

1   been told that I had handled a case that had the absolute

2   greatest number of images and videos that the FBI had ever

3   seen.  It was just an incredible collection, amassed by an

4   individual over a period of years and years and years of the

5   most horrific images.  That person will never get out of jail.

6   I find this crime to be a particularly serious one in our

7   panoply of serious crimes and my varying downward has

8   absolutely nothing to do with my view of sexual assault victims

9   who I have the greatest empathy for.  I have to look at each

10  case on its own and a 14-year sentence in the federal system is

11  a very long sentence.  It is without possibility of parole and

12  it's far longer than any defendant would receive in the State

13  side, even though they might get a, quote, unquote, longer

14  sentence imposed by the judge, the chances are that they're

15  going to get out of jail much sooner as a result of the fact

16  that they are eligible for parole.  And I've seen defendants on

17  the State side -- and I've sat all over the country -- get 25

18  years or 30 years for these kinds of offenses and be out in

19  five.  He will not be out in five years.  He will serve the

20  full term of his imprisonment and it certainly gives me no joy

21  whatsoever to impose a lengthy sentence, nor does it give me

22  any joy to see the kind of material that I had to view.  It's

23  one of the jobs that someone has to do and it has to be done

24  because our society simply can't tolerate these kinds of

25  activities.  And there's no question that the defendant played

1    a role as other consumers of child pornography play a role in

2    encouraging the production and distribution of these materials

3    because people get paid for it.  And unfortunately, it's become

4    a business.  And that is a real sad commentary I'm afraid and

5    it's all part and parcel in many instances of sex trafficking

6    which we see is a growing problem in this country.  Although

7    this defendant didn't engage in sex trafficking, he certainly

8    engaged in the consumption of child pornography.  All right.

9    Is there anything else from counsel?  Mr. Convery?

10              MR. CONVERY:  No, Your Honor.  Thank you.

11              MS. RICHARDSON:  Nothing further, Your Honor.  Thank

12    you.

13              THE COURT:  Court stands in recess.

14              COURT SECURITY OFFICER:  All rise.

15              *(10:57 a.m.)*

16                           *   *   *

17

18

19

20

21

22

23

24

25

1                      *   *   *   *   *

2     UNITED STATES DISTRICT COURT

3     WESTERN DISTRICT OF TEXAS

4

5          I certify that the foregoing is a correct transcript from

6     the record of proceedings in the above-entitled matter.  I

7     further certify that the transcript fees and format comply with

8     those prescribed by the Court and the Judicial Conference of

9     the United States.

10

11    Date signed:  February 2, 2022

12

13    /s/ Angela M. Hailey

14    Angela M. Hailey, CSR, CRR, RPR, RMR
      Official Court Reporter
15    655 East Cesar E. Chavez Blvd., Third Floor
      San Antonio, Texas   78206
16    (210)244-5048

17

18

19

20

21

22

23

24

25